Mieke K. Malmberg [SBN 209992]
mmalmberg@skiermontderby.com
SKIERMONT DERBY LLP
800 Wilshire Boulevard, Suite 1450
Los Angeles, California 90017
(213) 788-4500
(213) 788-4545 (fax)

Sarah E. Spires [SBN 252917]
sspires@skiermontderby.com
SKIERMONT DERBY LLP
2200 Ross Avenue, Suite 4800W
Dallas, Texas 75201
(214) 978-6600
(214) 978-6601 (fax)

Attorneys for Richard Staychock and
Kathleen MacKay Staychock

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD STAYCHOCK AND KATHLEEN MACKAY STAYCHOCK, <br><br> Plaintiffs, <br><br> vs. <br><br> KLEAN KANTEEN, INC., a corporation, <br><br> Defendant. <br><br> KLEAN KANTEEN, INC., a corporation, <br><br> Counterclaim Plaintiff, <br><br> vs. <br><br> RICHARD STAYCHOCK AND KATHLEEN MACKAY STAYCHOCK, <br><br> Counterclaim Defendants. | Case No.: 2:17-cv-01012-KJM-CMK <br> [Hon. Kimberly J. Mueller] <br><br> **STIPULATED ORDER ESTABLISHING PRODUCTION OF ELECTRONICALLY STORED INFORMATION** |

1

2804808.1

**I.      SCOPE**

Pursuant to Fed. R. Civ. P. 16 and 26 and the Court's Minutes for Scheduling Conference held on September 14, 2017 (Doc. No. 10), the Plaintiffs / Counterclaim Defendants, Richard Staychock and Kathleen Mackay Staychock ("Plaintiffs") and Defendant / Counterclaim Plaintiff, Klean Kanteen, Inc., a corporation ("Defendant") (Plaintiffs and Defendants collectively referred to as the "Parties") have conferred regarding matters affecting the discovery of electronically stored information ("ESI" or "E-discovery") and agreed on the following procedures regarding the production for ESI in this case, which the Court finds appropriate ("Stipulated Order").

**II.     GENERAL PROVISIONS**

1.      This Stipulated Order does not determine the relevance, discoverability, confidentiality, authenticity or admissibility of any ESI of the Parties, does not expand any record preservation requirements under the Federal Rules of Civil Procedure, and does not limit any protection provided by Fed. R. Civ. P. 26 or Fed. R. Civ. P. 37.

2.      This Stipulated Order does not waive any objections as to discoverability, confidentiality, authenticity or admissibility of any ESI, or any objections raised by a Party in their written responses to specific discovery requests served in this case.

3.      Nothing in this Stipulated Order shall be interpreted to require the disclosure of any ESI that a Party contends are protected from disclosure by the attorney-client privilege, work product doctrine or any other applicable privilege or protection.

4.      This Stipulated Order shall not require the Parties to create or supply any information, metadata or otherwise, which is not maintained by the Parties in the usual course of business.

2804808.1

5. This Stipulated Order is subject to, and does not modify or supersede, the terms and conditions of any protective order agreed to between the Parties or entered in this case.

**III. DEFINITIONS**

6. "**Electronically stored information**" or "**ESI**," as used herein, has the same meaning as contemplated by the Federal Rules of Civil Procedure.

7. "**Native data format**" means and refers to the format of ESI in which it was originally generated and/or normally kept by the producing party in the usual course of its business and in its regularly conducted activities.

8. "**Metadata**" means (a) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, and (b) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated.

9. "**Documents**" has the same meaning contemplated in the Federal Rules of Civil Procedure.

10. "**Static Image**" refers to a representation of ESI produced by converting a native file into standard image format capable of being viewed and printed on standard computer systems.

11. "**Media**" means an object or device, real or virtualized, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

**IV. IDENTIFICATION OF E-DISCOVERY LIAISONS**

12. The parties identify their E-discovery liaisons as follows:

Plaintiffs identify: Mieke K. Malmberg and Sarah E. Spires, counsel for Plaintiffs.

Defendant identifies: Phil Ducker, counsel for Defendant.

## V. PRODUCTION OF ESI

13. Subject to the limitations in this Stipulated Order, on a rolling basis the Parties will produce responsive, non-privileged ESI (regardless of its original format) as imge files or text searchable files (i.e. TIFF), unless otherwise agreed. For TIFF file documents that do not contain redactions, the Parties will produce an extracted text file for each electronic document where text can be extracted, and an Optical Character Recognition ("OCR") text file for (a) each imaged paper document and (b) each electronic document for which text cannot be extracted. For TIFF file documents that contain redactions, the Parties will provide an OCR text file for the unredacted portions of such documents. Said extracted text and OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files (Example000000001.tif and Example000000001.txt). The Parties shall also provide mutually acceptable load files linking the TIFFs with their associated text file in order for the documents to be loadable into document management software.

14. **Image Formatted Documents.** With respect to image formatted documents, the parties agree to produce certain document level information including starting production number and ending production number, beginning attach, end attach, native file link (if applicable), and confidentiality designations. While there is no general obligation to produce metadata, to the extent such metadata is readily accessible in the document as kept in the ordinary course of business, the parties will use reasonable efforts to provide the following metadata: author, original filename, document extensions, modification date and creation date. Parties may also provide custodian information to the extent it is readily accessible and/or

2804808.1

available. If redacted electronic documents are produced, some of the metadata may be removed from the data load files and from the "Full Text" field.

15. **Emails.** With respect to emails, the parties agree to produce certain document level information including starting production number, ending production number, beginning attach, end attach, native file link (if applicable), OCR/extracted text path and confidentiality designations. While there is no general obligation to produce metadata, to the extent metadata is accessible in the email as kept in the ordinary course of business, parties will use reasonable efforts to provide the following metadata: to, from, cc, bcc, date sent, and subject. If redacted emails are produced, some of the metadata may be removed from the data load files and from the "Full Text" field.

16. Attachments, enclosures, and exhibits to any parent document should be produced and proximately linked to the respective parent document (and vice-versa).

17. Electronic documents will be produced in native file format if necessary for the accurate portrayal of the document's ordinarily viewable or printable content, including, for example, Microsoft Excel spreadsheets (.xsl, .xlsx, .xlsm, and .xlsb files). Documents produced in native file format shall be produced together with a placeholder TIFF image marked with the words "File Produced Natively" along with the appropriate confidentiality designation (if any), production number, and a file path to the native file.

18. In the event that a Receiving Party requests production of Native Format ESI, the Producing Party and the Receiving Party shall negotiate in good faith about the timing, cost and method of such production. No document produced in Native Format shall be intentionally manipulated to change the appearance or substance of the document prior to its collection. When producing a file in native format, it shall be accompanied by a TIFF image

5

marked with the words "File Produced Natively" along with the appropriate confidentiality designation (if any) and production number. In addition, because native documents may lack production numbers or confidentiality designations branded on the face of the document when printed, any such numbers or designations shall be contained in a load file and in the name of the native document, which associates this type of information with each native file produced.

19. Certain types of files, such as system, program, and sound files, may not be amenable to conversion into TIFF format. Those files will not be converted into TIFF format but, if required to be produced, will be represented in the form of a placeholder TIFF image and produced in a reasonably usable form by agreement of the Parties. Examples of such file types that are not conducive to conversion into TIFF image include: *.mov *.mp3 *.exe *.wav *.dwg.

**VII. PROCESSING AND LOGGING OF PRIVILEGED DOCUMENTS**

20. If either of the Parties determines that a parent document will be withheld as privileged, the Party shall make a separate determination regarding whether to produce, redact, or withhold each of its attachments, enclosures, and exhibits as privileged. If a Party determines that only an attachment, enclosure, or exhibit to a parent document is privileged, the attachment, enclosure, or exhibit shall be redacted and then produced in redacted form with the parent document.

21. The Parties shall create logs of the responsive documents that they withhold from production or redact on grounds of attorney-client privilege, the attorney work product doctrine or any other claim of privilege (the "privilege logs"). The Parties are not required to log privileged documents dated after the filing date of the complaint.

2804808.1

## VIII. DE-DUPLICATION OF DOCUMENTS

22. Prior to production, the Parties may de-duplicate e-mails and other ESI designated for production

## IX. PRODUCTION OF DOCUMENTS CONTAINING COLOR

23. Documents containing color need not be produced in color; however, if color is necessary to understand the meaning or content of the document, the producing Party shall produce either the original document for inspection and copying or a color image of the document.

## X. THIRD-PARTY SOFTWARE AND DECRYPTION OF FILES

24. To the extent that ESI produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall cooperate and seek to attempt to minimize any expense or burden associated with production of such data. The Parties shall meet and confer to address such issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

25. The Parties shall make reasonable efforts to ensure that all ESI that they produce is decrypted.

## XI. PRODUCTION FORMAT

26. Each page of a produced document in TIFF format shall have a legible, unique Bates Number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document (preferably in the lower right-hand corner of the image).

27. The Bates Number for each page of each document shall be created so as to identify the producing Party or Parties by using a unique prefix.

2804808.1

28. The producing Party will produce documents that are to be produced in TIFF format (along with the corresponding load files) on readily-accessible, computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface), based upon the amount of data to be produced and the receiving Party's preference. The producing Party may also make such documents available via secure FTP site.

**XII. LIMITATIONS ON DISCOVERY – PRODUCTION**

29. No Party shall be required to re-produce any documents produced or exchanged prior to the date of this Stipulated Order, including materials submitted prior to commencement of the instant lawsuit, or to backfill any information associated with such documents.

30. A Party producing data in electronic format need not produce the same document in paper format.

**XIII. OBJECTIONS TO ESI PRODUCTION**

31. Documents that present imaging or format production problems shall be promptly identified and disclosed to the requesting party; the parties shall then meet and confer to attempt to resolve the problems.

32. If either party objects to producing the requested information on the grounds that such information or productions in the requested format is not reasonably accessible because of undue burden or cost, upon request, the responding party will inform the requesting party of the the format, if at all, in which it is willing to produce it, the estimated volume, file types and location of the information claimed to not be reasonably accessible, the reason(s) the requested form of production would impose an undue burden or cost, and a quote from a third party vendor concerning estimated costs to render the material accessible. Although the Parties agree to use best efforts to resolve such issues amongst themselves, the requesting party may bring the issue

2804808.1

before the Court under the appropriate local rules. Notwithstanding anything contained herein to the contrary, a producing party shall not produce ESI in a format not requested or designated by the requesting party (i) unless the parties have met and conferred, and, having been unable to resolve such format production conflict at such meet and confer session, (ii) prior to referral to and resolution of such issue by the court.

**XIV. CLAWBACK PROVISIONS**

33. The producing Party shall have the right to "claw back" (i.e., have returned from the receiving party) any information disclosed in connection with this case which contains confidential commercial information, information protected by the attorney-client privilege, information protected by the attorney work product doctrine, and any other applicable privilege or immunity ("Disclosed Protected Information"). The disclosure of any Disclosed Protected Information shall not be deemed a waiver or forfeiture of any claim of privilege that the producing Party would be entitled to assert with respect to the Disclosed Protected Information and its subject matter. The producing Party must exercise its rights under this Paragraph by providing a written notice to the receiving Party that the producing party is invoking it right to claw back such documents and identifying the documents to be returned. Upon receipt of such written notice, the receiving Party shall immediately cease any use, whatsoever, of such documents. Within 10 days of receiving such written notice, the receiving Party shall provide the producing Party a written confirmation that all Disclosed Protected Information has been returned or destroyed, or state its intention to move to compel the production of Disclosed Protected Information.

## XV. MODIFICATION OF STIPULATED ORDER

34. This Stipulated Order may be modified for good cause. The Parties shall jointly submit any proposed modifications. If the Parties cannot resolve their disagreements regarding those modifications, the Parties shall submit their competing proposals and a summary of their dispute to the Court for resolution.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: September 28, 2017

Respectfully submitted,

| | |
|---|---|
| SKIERMONT DERBY LLP | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C. |
| */s/ Mieke K. Malmberg* | */s/ Evan S. Nadel (as authorized 9/28/17)* |
| Mieke K. Malmberg [SBN 209992] | Evan S. Nadel [SBN 213230] |
| mmalmberg@skiermontderby.com | enadel@mintz.com |
| SKIERMONT DERBY LLP | Philip C. Ducker [SBN 262644] |
| 800 Wilshire Boulevard, Suite 1450 | pcducker@mintz.com |
| Los Angeles, California 90017 | MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C. |
| (213) 788-4500 | 44 Montgomery Street, 36th Floor |
| (213) 788-4545 (fax) | San Francisco, California 94104 |
| Sarah E. Spires [SBN 252917] | (415) 432-6000 |
| sspires@skiermontderby.com | (415) 432-6001 (fax) |
| SKIERMONT DERBY LLP | |
| 2200 Ross Avenue, Suite 4800W | Attorneys for Kleen Kanteen, Inc. |
| Dallas, Texas 75201 | |
| (214) 978-6600 | |
| (214) 978-6601 (fax) | |
| Attorneys for Richard Staychock and Kathleen MacKay Staychock | |

**ORDER**

IT IS SO ORDERED.

Dated: October 12, 2017

_____
CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE

11

2804808.1